Clerk, please call the next case. Senator Lange, on the floor of the Board of Directors for the Brooks Chrysler v. Hyde Court. Counsel, please. Good afternoon, Your Honors. Counsel, may it please the Court. Your Honors, I'd like a short rebuttal after counsel presents. Your Honors, this claim involves very similar circumstances to the matters that were just presented to you. But for purposes of this claim, there are several factors that are important and do not appear to be in dispute. The petitioner was injured in 1996, underwent multiple surgeries to his hands and to his left elbow, and continued to treat for those conditions up through January of 2002. In January of 2002, his treating doctor, Dr. Mass, indicated that at that point he was going to be disabled from returning to work as an auto mechanic and that the insurance company might want to consider vocational rehabilitation efforts. Unfortunately for Mr. Hollingsworth, in April of 2002, it was found that he had a clear cell sarcoma in his right leg and underwent major surgery to remove the sarcoma and also underwent reconstruction surgery involving the right leg. In April of 2002, Dr. Mass again rendered an opinion indicating that normally at that point, he would recommend a work-hardening program followed by a functional capacity evaluation and, again, vocational efforts. Dr. Nagle in 19, I'm sorry, in 2002 and 2003 indicated that an FCE was indicated. All the medical opinions in this claim indicate that with regard to Mr. Hollingsworth's hand condition, he was capable of some type of employment and a functional capacity evaluation would be required. In April of 2000. Are you disputing that the claimant falls into the ADLAT category here? Yes. In a nutshell, that's it. And Justice Hoffman indicated during the arguments preceding this that there are two factors that the claimant must establish by preponderance of the evidence in order to fall within the ADLAT, permanent total disability, and that being that he conducted an unsuccessful, diligent but unsuccessful job search, or that he can demonstrate by preponderance of the evidence that based on his age, education, training, he was unable to perform any work except for. Well, that's what the commission found. Well, the commission found that, but they did so by ignoring the vocational opinions that were presented to them. Is that on the allegation of being an unarmed security guard? Is that what you're alleging, that he could have obtained employment as an unarmed security guard? Well, the doctors did not say he had no use of his arms. The vocational experts indicated that he had limited use of his arms, and the two vocational experts concluded that he was capable of finding some type of work or finding employment as a security guard. Now, Mr. Radke, he didn't say he couldn't work as a security guard, but he said the higher end or middle range is probably unrealistic for him. What's more realistic is the beginning rate job as a security guard. So, yes, Mr. Hollingsworth can work as a security guard because Mr. Blumenthal said he could, and Mr. Radke said he could. All right. The commission found that that was unrealistic, so to speak, in light of all the factors, his age, no previous work experience, little in the way of hand-eye coordination, limited IQ, limited ability to function in an environment where there would be contact with customers or the public, certainly that could be in the case of an unarmed security guard. So can the commission, or is the commission not entitled to reject that recommendation? No, they can't when it's the only medical or, I'm sorry, it's the only expert opinion presented in the case. There are circumstances where the commission can draw reasonable inferences. And, for example, and that's why I referenced the Furlong case, in terms of a causal connection opinion, normally you would look to have a medical opinion to establish that there's a causal relationship. And certainly a case would be cleaner if it has a medical opinion in it. But there are circumstances where the commission can draw an inference based upon a condition of good health prior to an occurrence and a condition of well-being followed by an occurrence. But as the Court pointed out in Furlong, when the commission's conclusion regarding that, that perhaps permissible inference in that claim is controverted by the only expert opinion submitted, then in that circumstance the decision is against the manifest way to the evidence. In the commission's, the factors that the commission cites, age, education, training, et cetera, are factors that the commission can consider, but they're considering it in the context of the petitioner's or the claimant's burden of proof in the claim. The claimant has the burden to establish all these factors by a performance of the evidence. It's not simply him testifying to his age, to his education, and his experience, but it's based on the expert's opinions with regard to what that means in terms of his employability. And in this claim, the only experts who presented opinions in this claim said when you take those factors in this circumstance, age, education, training, experience, he is employable. But what about if the evidence from the testimony of the claimant weighed against that, satisfies the commission that he's not employable as a security guard? Are their hands tied? If the vocational rehab experts testified that there is this availability of work as an unarmed security guard and the commission finds based on its assessment of the totality of the evidence that it's not realistic, why can't they do that? Well, because I guess the best way to answer that, Your Honors, is because then they're reaching a conclusion that's contradicted by the only evidence submitted in regard to those factors. The only evidence that is submitted with regard to those factors was the opinions offered by the two vocational experts. And is the commission in its expertise capable of taking those known facts, rejecting the opinion that the vocational rehabilitation experts came to and come to a contrary opinion in their own right? Well, it would appear if they purport to have that authority, it's not supported by any prior decisions. There are no decisions where they were able, they were authorized to reach that conclusion without some sort of expert opinion accompanying it. And again, even if there was a permissible inference that they might try to draw with regard to this, if respondent or the employer had not obtained any opinion, and I suppose at that point we could have taken the opinion that there was no successful job search and therefore were withdrawing benefits. But the employer took the step of obtaining a vocational expert opinion. And in that circumstance, the only evidence with regard to his employability is the expert's opinion, the person who was called to determine whether or not this individual is employable, considering his age, education, experience, and all that. What you seem to be saying is you have the rehab experts testifying that he's employable in this industry. All right. We always talk in terms of the credibility of the commission. It's well settled. It's obviously for you to determine the credibility of the witnesses. You'd agree with that point of law, correct? That's correct. In this case, you have a little bit of a twist there. The commission found, I believe it was quoted, that the testimony was unrealistic. So if they can find that the testimony is not credible, can't they also legitimately conclude, keeping in mind, again, the totality of the evidence, that the vocational rehabilitation expert's testimony was not realistic, and they rejected it because it was not realistic? Can't they do that? Well, what the commission said was that the opinion of Mr. Blumenthal was unrealistic, and they ignored the opinion of the expert of Mr. Radke's opinion, who expounded upon that. They came to the same conclusion, though, right? They came to the same conclusion. But they did so in ignoring the only evidence with regard to his employability. I mean, they can judge credibility with regard to witnesses, but if you have seven witnesses who testify that an individual suffered an accident at work, and for whatever reasons, those witnesses are not credible, they appear to be, you know, there are inconsistencies with their stories, there may be relevant criminal histories, et cetera, et cetera, et cetera, and there's no opinion, or I'm sorry, witness testimony to contradict that testimony, then in that circumstance, the commission can only find that there was an accident that occurred.  The only evidence submitted is the evidence of the experts who evaluated Mr. Blumenthal. So then as a matter of law, the respondent would have to win an issue. There's no discretion in the commission to believe or disbelieve the credibility or the realistic believability of the witness, as you're saying. The case is obviously over as a matter of law under your argument. Well, I suppose arguably it would be, but I was looking at the issue in this claim in light of the Furlong case and in light of the Western Hotel case where they said, where the courts looked at the question as a question of fact for the commission to render a decision with regard to this, to the extent of this disability. And then the other, when they render a decision that is not supported by any of the evidence, then the decision is wrong, it's, you know, against the manifest way of the evidence. So in this circumstance, there was zero evidence to support the conclusion that the commission reached at that point. All right. So we'll use the simplest terms. I understand what you're saying. You're saying based on this, because there doesn't seem to be contrary evidence, I'm not saying I accede to the correctness of your entire assessment. You're saying based on that, an opposite conclusion is clearly apparent because there's nothing in the record to contradict that. Correct. All right. That might go too far, though. Let's assume for a moment you're correct. We have two experts. Both of them saying that this man with his age, his experience, et cetera, and his difficulties is capable of some type of employment. And the commission terms you're on set a pox on both your houses. I don't find either of you credible. Does that mean that he is capable, is not capable of other employment, or does it merely mean that the petitioner has failed to prove that he wasn't capable of other employment? Well, it means that he has failed to. I think you go too far to say that necessarily the opposite conclusion has to be clearly apparent. I think in this particular case you've got to ask yourself the question of whether it becomes a failure of proof. I suppose you reduce it to the simplest. If two witnesses say the light is green, and the trier effects is a pox on both your houses, does that mean the light is red? Exactly. That's the question I'm asking you. Or does it merely mean that there is now no proof that the light was green? And depending on where the burden of proof lies will determine whether the burden has been met. I think it's a little bit, it's twofold in this case, Your Honor. And I think it kind of falls a little bit along both of those lines. First of all, the experts who presented their opinions in this case stated that he was employable. So the opposite conclusion is clearly apparent in this case. But along those same lines, Your Honor, the claimant has the burden of proof to establish by a preponderance of the evidence that he is unable to work based upon his age, training, education, experience. And according to the commission decision, all someone has to do is say, I'm 51 years old, and I worked as an auto mechanic my entire life, and this is the extent of my education. Well, that's not the fact. That does not establish, that does not reach to the level of establishing that they are now disabled from working in a stable labor market by a preponderance of the evidence. So what do we have to look at? So in other words, you're saying the commission always needs these supposed experts out there, right? I would say, based on the history of the case law, there always was an expert involved. I would also say that if there is a circumstance where there was no expert and they felt that they could draw a permissible inference, there might be a circumstance where someone is obviously unemployable based on their age, education, experience. Well, if we look at this decision, they list these factors, and that's what we have to conclude they find is sufficient, these factors taken together in this combination with this individual are sufficient to do so, aren't they, saying that? And you're telling me they can't really do it because we don't have an expert here? No, I'm saying they can't because it's contradicted by the only expert opinions offered. Well, they can reject those experts, can't they? Well, if they were to reject the experts, then the decision would be against the manifest way to the evidence because that's, you know, as the courts noted in the Furlong case, sometimes the commission can draw permissible inferences. And in the Furlong case, they drew a permissible inference with regard to causal connection. The court said there were the only medical opinions offered in that case so that this assist that they developed that they found in his spine in the Furlong case was unrelated to the work accident. So no longer can you draw that permissible inference because the only experts who presented their opinions in this case said that that was not related to the accident. Counsel, your time is up. You'll have time on rebuttal. Thank you. Counsel, please. Good afternoon, Your Honors. My name is Tony Rombucci, and I represent Mr. Hollingsworth, who is the appellee in this case. You know, I'm not going to spend time now going through the facts because Mr. Swift We don't need to. I know. And I want to get right to the heart of the argument here with respect to this issue about experts testifying. Well, that's exactly the case here. There are two issues here. Number one, is he odd lot? Yes, he is odd lot. He falls under the national T factors of odd lot. This is not a medical odd lot. We know that, so that's crossed off the list here. This is a national T odd lot where all of the factors, the age, education, prior work history, all falls into consideration here. And what wasn't mentioned in counsel's argument is one key critical factor here. Not only did Mr. Hollingsworth meet his burden under the Valley Mold case, as Your Honors recall, the commission relied on Valley Mold in determining his odd lot permanent total disability. And the factor in Valley Mold that's critical to this case also is whether or not a stable labor market exists for this particular individual to be continuously employed. And he can't. That's what the industrial commission. I don't think anybody disputes the fact that he's unemployable. But the question is, if one discounts consideration for his right leg condition, what is the opinion as to his employability then? And Blumenthal seems to say that if he didn't have a right knee problem, he'd be capable of performing work as a security guard. Radke seems to imply that the right knee condition eliminated any employment where the ability to walk was an essential part of his job. This case, there's something more important in this case than just this issue. Number one, was the commission entitled to take into consideration his right knee condition in determining whether he was capable of gainful employment for a permanent total status? They did, Your Honor. Well, they said they didn't. They said they would have found it without. Correct. So if you take it out, you've got an opinion by Blumenthal that says he could work as a security guard, and you've got an opinion by Radke that says that it's his right knee condition that eliminated his ability to work. But my question to you is, let's assume now that we've got testimony that the man has a ninth grade education, that he has a GED, that he's weak in a numerical aptitude and motor skills, that he has a 90-something IQ, that his ability, his dexterity with small objects is at the bottom 1% of the working population, his hand-eye coordination is the bottom 10%, and his ability to work in a manufacturing bottom was the bottom 1% of the working population. If those are the facts, and the experts all agree on that, and then they both draw the conclusion and say, but there's a stable labor job out there for him, does the commissioning have the ability and its expertise to say, that's nonsense. There is no job for such a person. Can they do that? My answer to you is the trier of fact. They could. They could reach that conclusion as a trier of fact, Your Honor. Now, I obviously agree with everything that you said, except that a stable labor market exists because there was none, no testimony that was given. So if I, given all your hypotheses, and I wrote them. You don't have to establish that one exists. You've got to first establish that one doesn't. And then they have to establish that there's a job. Don't switch the burdens. You're the petitioner.  And we did meet that burden, Your Honor. Who said it? Not only with Blumenthal, but Ratke. Because nobody was able to testify. See, let's go back and let's clarify Ratke's testimony. Ratke never said, this guy can go out there and work. Ratke said, there's a possibility. A possibility does not establish the basis for employment. Possibility to function as a security guard. Possibly could. That's exactly it, Your Honor. A possibility does not establish the basis for employment. And that's why I'm suggesting to you very strongly that if there was a stable labor market, the employer, in this instance, hired its own vocational consultant. Why did it stop merely at the point of testifying? They could have gone out there and found it. Does he have to? That's right. Does he have to? Yes, he does, because we met our burden, Your Honor. Where is your burden? Where is the testimony that says there is no stable labor market for this man? Exclusive of his right leg condition. Your Honor, if I may, the interlake and the valley mold case, and I cite it on page 6 of my brief, clearly states that after proving a disability in the so-called odd-lot category, the burden shifts to the employer to establish that suitable work is regularly available to the claimant. We have met our burden by establishing under the national T factors interlake and valley mold that Mr. Your obligation is to show that in light of his age experience, training, and education, he is unable to perform any but the most menial tasks for which no stable labor market exists. And that's exactly what I'm reading a direct quote from AMTC. That's the quote. You have to do that. Who gave you that testimony? Tell me who gave you that testimony. I can tell you what Mr. Ratke said. And, Your Honor, if you don't agree with Tell me what Mr. Blumenthal said. Well, the commission agreed with Mr. Ratke. What did Ratke say? Mr. Ratke said he noted that claimant's ability to perform duties of a security guard would be hindered because of his nerve-damaged arm. Then Mr. Ratke goes on to suggest that he could be a parking lot attendant as a possible alternative because that was the questioning that was posited to him. And furthermore, Mr. Ratke also noted that claimant's ability to obtain such employment was reduced as a result of his lack of a GED. So the one thing Your Honor said in positing all those factors earlier was that Mr. Hollingsworth has a GED. He does not have one. He does not. He does not have one. So when you take all those factors into consideration, he can't perform any but the most menial task. Therefore, we've established our burden beyond that which we had to do, Your Honor. Well, we're talking about the let's focus in, I think. Yes. We're getting a little far. Yes, Justice. The stable labor, anything, that there's no stable labor market out there. What is there in the evidence that would allow the commission to make that inference? That's based upon the testimony of either Mr. Blumenthal or Mr. Ratke. Now, Blumenthal is the respondent. Correct. And Ratke is yours. Correct. This is two experts, each one hired by the other side. Let's go back to your burden of no stable labor market. What in Ratke's testimony would establish that? Or what in the evidence about the condition, obviously, of the claimant would allow an inference to be made by the commission at that point? There is no direct testimony that there is a stable labor market because we sustained our burden. It's not our burden to prove once we establish those national key factors that Valley Mold relied upon. Mr. Ronucci, you're wrong. AMTC, let's go back to AMTC. I'll read you the quote again if you want. Which tells you what your burden is. I'll read you the quote again if you want. And a claimant establishes he fits into an odd lot category by showing a diligent but unsuccessful job search or by showing that, quote, in light of his age, experience, training, and education, he is unable to perform any but the most menial task for which there is no stable labor market. That's what it says. So now the question becomes, whose burden is it to prove the labor market? Is it the plaintiff's burden to prove no stable labor market? Or is it the defendant's burden to prove that there is? According to AMTC, it's the petitioner's burden to prove no. Now, once he does that, once you introduce no, then the burden shifts to the respondent to say, wait a minute. Here's evidence that he can do this job, and this is available, and he can do that job, and that's available. So I think we've got to get into number one. What is the burden? Whose burden is it? When does it shift? And what can they take consideration? And overriding this whole thing is, is the commission capable in its expertise of drawing its own conclusions based on the facts, contrary to the conclusions drawn by the known facts by the experts. And I don't know the answer to the last question. Well, I believe I answered it. I don't think I need to repeat it for the Justice. Well, the way out of this trick bag is to go back to my original question. You have your vocal experts, Mr. Ratke. Correct. What in Mr. Ratke's testimony could allow the commission to make a reasonable inference that there is no stable labor market where you're applying? Again, Your Honor, I believe it's clear. When Ratke said it's possible that he could do these things, Ratke never said that he had employment as a security guard. He said that it could be a possibility, just like he could possibly be a parking lot attendant, and without casting any stones upon any man or woman that works, a security guard and a parking lot attendant are probably considered the bottom of the barrel when it comes to vocational rehabilitation and job placement. Those are considered the menial tasks of vocational rehabilitation when it comes to employment. And they left out one other job, and that's a clerk usually at a 7-Eleven or some type of gas station. Those are considered the three menial jobs that one is put into almost like the catch-all basket when there is no other employment, security guard, clerk, or a parking lot attendant. And Ratke was clear. There's no testimony that Ratke ever gave that said that he could do that, and neither did Blumenthal. Blumenthal said it was possible that he could be a parking lot attendant. So I believe, you know, given that testimony, I shouldn't say I believe, the burden, we met our burden, and then the burden shifts to the employer. We have demonstrated that, I believe, clearly given the language in AMTC. Okay. Now, I think the other question that we were trying to get answered in your argument is this leg issue. The leg issue? Yes. Can the commission take that into consideration in making, then, the determination that he is incapable of being employed by the standard under AMTC?  Well, they did, but is it permissible for them to? Yes. I believe it's permissible because there was evidence in the record. So I think once there's evidence in the record of it, I think they do need to address it. I think if they ignored it, that would have been worse. Well, you understand, because this prior discussion, Justice Hoffman said we're excluding all of that. We're just looking at the claimant ignoring that condition of his leg, because there did seem to be discussion that if we add that condition of the leg, the picture changes. In fact, it changes more favorably. Yeah. I mean, the commission stated that other compelling factors weigh in favor of odd lot, even when no consideration is given to the non-work-related sarcoma, and then they go into the factors. Well, assume that it can be considered and assume that they're wrong about it could be sufficient without it, including that leg situation. Okay? Yes. When you look, if you do consider the leg, the FCE was performed years after the sarcoma was removed. I believe the timing was 2002, and the FCE was 2004, 2005. When you look at the hindrances or the disabilities that the FCE outlined, there were few, if any, that related to his current condition with respect to the The injury at work took place when? 1996. 1996. Yes. When was the cancer diagnosed? Oh, gosh, the diagnosis? April of 2004. Now, an employer takes his employees the way he finds them. Correct. But he doesn't take them as they may develop in future years. So now the question becomes, if the cancer that affected his right knee did not occur and was not diagnosed until after the injury for which he seeks benefits, can he rely on that right knee condition in order to increase his entitlement for benefits? I would suggest not. Well, I mean, it's an interesting question because, you know, it also goes on. It's intervening. We know that. It's an intervening event, and then determining whether it's work-related or non-work-related. It's a non-work-related intervening event. And does this non-work-related intervening event, is it a proximate cost to his ability to return to work? Yeah. Didn't the commission itself say, didn't they say that they found he was entitled to PTD based upon the record, even when no consideration was given to non-work-related Correct. And that's my, if I was going to finish my last sentence with regard to the proximate cause issue, I think the commission found that even with the leg, without the leg, either way, he's still a primate. I don't think that's why the question was asked of you. The question was asked of you because if they could consider it, you're a winner. Period. Because both of the experts said, with the leg, the guy can't work. Right. There's no disputing that. The question becomes, could they consider it, number one? And if they couldn't, is there evidence in the record that he fits into a non-lot? I mean, that's the train of the argument that he has to follow. Well, your time is up. You've gone past your time. I apologize. Thank you. Your vote, please. Well, you didn't necessarily. I did. Okay. Real briefly, your honors, to address the last question, I mean the city of Springfield case indicates that a subsequent unrelated condition shouldn't be considered in assessing the liability just for the reasons touched on by Justice Hoffman again, because you take your employee as you find them and they found him otherwise healthy and in the work-related condition, you know, is a separate issue. So you're saying we can't consider that? Cannot. And so the commission, kind of knowing that that might be the case, said even without that leg, we've got enough there. If you read between the lines, I think that's exactly what they were suggesting, is that they knew that this is the tipping point in this case, if you will, and so they wanted to try to find some other basis to award parental benefits. And then the counsel just briefly mentioned that Mr. Radke stated questions with regard to the courier because or, I'm sorry, answers regarding the courier because the questions were posed and there were no questions posed that it was, you know, based on the report that was submitted. But more importantly, Mr. Radke stated that these occupations are reasonable. And he, you know, it's clear that he says they are reasonable for Mr. Hollingsworth, given his age, education, training and experience. But you're saying that, okay, we have to go with AMTC, right? You don't disagree with that, right? That's correct. Okay. And you're not going to disagree that the menial nature of those two occupations he was talking about, that they are possibly menial? Well, what the standard is, is except for menial jobs for which no stable market exists. Okay. So you're saying it's got to be conjunctive for which no stable market exists. Correct. And you're still back to the argument that we've got to have somebody other than the commission to say that there's no stable market for that meniality. Well, no, I'm saying that, well, yeah, because we're going back to the burden and there was a lot of discussion with regard to the questions. But the evidence is clear what he is. A 92 IQ, he's got these deficiencies, we know what he can do, what he can't do. The question becomes can they in their expertise determine that if you have a person that has all of these characteristics, there is no stable labor market. Regardless of what Mr. Blumenthal and Mr. Radtke may say. Well, no, they can't do that because it's contrary to the evidence submitted because in that circumstance, Petitioner, the claimant has not met the burden to now shift the burden of production. What we're trying to suggest is if the claimant has gone under the AMTC standard, you just check it off, age, experience, training, education, meniality of what now we've got somebody saying that's about all he can do. Can they now do an equal sign and come up with a conclusion on their own, no stable market exists? Not if it's contrary to the only expert evidence submitted at the time of hearing. Do we have other evidence that said there is a stable market? In this case? Yes. Who said it? Well, they, the, at that point, we're still talking about Petitioner's burden to produce. No, no, I'm, if we. Okay, well, to answer the question, the experts state that these are jobs that he's capable of performing. And the, you know, as vocational experts, they've identified jobs that he is able to perform. So, you know, under the circumstances, you know, again, those are jobs that are available that he can. Well, granted, I granted all of that. Now we're just back to stable market. Is there anything in there that says stable market? Well, the reports don't, don't. The answer is no. The answer is no. Identify jobs that he's capable of doing. Correct. Thank you, counsel. The court will take the matter under advisement for disposition. We'll stand at recess until 9 o'clock in the morning.